Manpower, GSI, and Ricky E. Reilly, Appellate. Counsel, you may proceed. Good morning, Your Honors. My name is Michael Carr. I represent International Paper, the appellant in this case. May it please the Court, gentlemen, in this case for Bilateral Carpal Tunnel Syndrome, the only issue really in need of resolution is the correct manifestation date of Mr. Reilly's Bilateral Carpal Tunnel Syndrome. We all sort of know the law now. We've been talking about it for the last 15 minutes. Yes, sir. But by extension, which employer is liable to Mr. Reilly for benefits? International Paper respectfully submits the commission error in selecting May 22, 2008 as the manifestation date and thereby selecting my client, International Paper, as the responsible party because the commission didn't, the facts that they cite in their decision aren't even relevant to the discussion of when the Carpal Tunnel Syndrome would have been reasonably apparent to a reasonable, plainly apparent to a reasonable person. If you look at the commission decision, which was adopted from then-Arbitrator Ruth's decision, she seems to focus on the fact that International Paper was the long-term employer and then she focuses on the medical opinions from Drs. Stewart and Williams. Incidentally, then-Arbitrator Ruth didn't even get which examiner was for which party correct in her decision. She actually puts in her decision, Petitioner was examined at the request of International Paper by Dr. Williams on April 21. International Paper didn't hire an expert in this case and we certainly didn't hire Dr. Williams. But by putting that in her decision and noting Dr. Williams opined there was a causal connection between Petitioner's job duties with International Paper and his bilateral Carpal Tunnel Syndrome, the commission is relying on this fact that International Paper engaged Dr. Williams, which isn't the case at all. Dr. Williams was engaged by manpower to produce his opinions. But even then, when you consider, you don't even have to worry about the medical opinions in this case because it's not what a reasonable physician thinks. It's what's plainly apparent to a reasonable person. And when he was working for International Paper for those 32 years, he never had anything more than a suspicion about his hands and their relation to his work there. The commission found he never sought treatment during the entire 32 years he worked at International Paper for his hands. He talked about it with his supervisor, but he specifically testified, I didn't know what they was at the time he worked at International Paper. Council, manpower suggests at page 21 of its brief the following, and I'm just going to quote this. Petitioner testified that he informed his group leader at International Paper that his hands were bothering him. Petitioner even testified that he knew his hands were bothering him during his employment for International Paper due to the work he was performing. And this was the reason he informed his group leader at International Paper. Manpower goes on to say, the test under Peoria County Bellwood appears to have been met as Petitioner, during the time he was employed by International Paper, had symptoms and believed they were causally related to his work for International Paper. Is that correct or incorrect? I don't believe that's correct, Your Honor. He may have mentioned the symptoms to his supervisor, but he didn't know what the symptoms were. He didn't know what the condition was. Well, did Petitioner testify that that was the reason he informed his group leader at International Paper? He did, but if you look at Duran, which I understand Justice Hoffman thinks is... Well, it's caused a lot of problems. Yes. Most of these cases are as a result of Duran. And although Duran readily concedes that this is a question of fact for the Commission, that's exactly the opposite of what they did in Duran. The Commission had determined a manifestation date, and they said, no, you're wrong because it wasn't quote-unquote cleanly apparent. So most of these cases are caused by Duran. And I don't disagree with that at all, Your Honor. But the fact is, when you compare the facts of this case with the facts in Duran, the Petitioner in Duran had also told her supervisor about her symptoms and felt maybe they were related to work. But the Supreme Court indicated, well, that's just a suspicion. That's not enough. It wasn't plainly apparent to her at that time. So what manifestation date are you arguing for in this case? The manifestation date that we are arguing for is the date of the EMG, when that was performed while he was working for Manpower at GSI. What date was that? That date was? 9-23-08. Was that Dr. Stewart? Yes. It was ordered by Dr. Stewart. The EMG was ordered in June of 2008 after he was working at Manpower. Stewart diagnosed it on 9-23-08 and said it was work-related, I guess. That would be my understanding, yes, Your Honor. We are arguing for that manifestation date rather than May 22, 2008, when he ceased working at International Paper. It was August 13-08 when he got the diagnosis. Yes, sir. The point is, when he stopped working at International Paper on May 22, 2008, he didn't have anything more than a suspicion. He hadn't had treatment. He didn't have a diagnosis. He didn't know what his hand symptoms were. He testified to that. It hadn't affected his job duties at all. He didn't testify that it had affected his job duties at International Paper. At most, he had told his supervisor he had some hand symptoms, which is similar to the petitioner in Duran. It's not until he goes to work at Manpower where he's performing duties that he felt were far more hand-intensive and involved far more fine manipulation than had his duties at International Paper. When his hands go so numb, he can't even feel the bolts, and he's having trouble picking them up. So now we have a severe increase in the severity of his symptoms after he's been performing these job duties at Manpower. It's severe enough that it prompts him to go see a doctor, which he hadn't done before for his hand symptoms. And as a result of going to see a doctor, he gets a diagnosis and is told by the doctor, you have carpal tunnel syndrome. At this point, I would submit to you that it's plainly apparent to a reasonable person that he has carpal tunnel syndrome because of the work he was doing at Manpower, and it's plainly apparent to him on the date that he's told by the doctor, you have carpal tunnel syndrome. Unless there's any other questions, Your Honors. Then you're suggesting, as I think we've heard this week, we should write an opinion that says plainly apparent can only be achieved by the claimant when there's a medical diagnosis. And is that in violation of Durand? I mean, should we just draft that and get rid of all this stuff? Plainly apparent? And just say that the only way you can establish plainly apparent is evidence of a medical diagnosis communicated to the claimant. What I would urge this court to do with respect to this case is find that it was not plainly apparent to him on May 22, 2008, that his carpal tunnel syndrome was related to his work at International Paper. I don't know that you specifically need a medical diagnosis, but at this point, he's got work which is more hand-intensive. That's the problem with Durand, right? I can't disagree that there's problems with Durand, but it's the law that we have from the Supreme Court. That's what we have to follow. In this case, I would submit to you that the facts in this case are very similar to the facts in Durand, and therefore Durand should dictate the findings of this case. Just one difference. Yes, sir. In Durand, by choosing the manifestation date that the Supreme Court chose, the claimant was allowed to recover. If the Supreme Court had agreed with the commission that the manifestation date was when she suspected it, there was no recovery of his time. So the question becomes, is that a difference? Is the when we apply plainly apparent means a diagnosis versus mere suspicion? But you don't have to reach that in this case, because the petitioner is going to recover. It's just a matter of who he's going to recover from. Okay. Thank you, counsel. Thank you. Before appellees begin, I see there are three appellees who wish to argue. Am I correct? Okay. You have to divide the time. Have you decided how you wish to divide the time? And if so, if you haven't, please decide now and inform the clerk so the clerk can advise you. Five, five, five. And two. You get 15. You get 15. That's a good division. He's very equitable about it. Don't cut him off. Yeah. Okay. Clerk is so informed and will keep time for all three appellees. Thank you very much. May it please the court. Five, five, five. Five, five, five. Thank you, Your Honor. My name is Steve Kelly here on behalf of Nell and Kelly, representing Manpower in this case. I respectfully disagree with counsel's position that Mr. Riley did not know and it wasn't plainly apparent to him that his carpal tunnel was related to his work at International Paper. He testified on cross-examination that his hands were numb and bothered him while working there. He worked there for 32 years. He testified on cross-examination that he knew that those work activities bothered his hands. He further testified on direct examination and cross-examination. In direct examination, he testified on a question by his own attorney. I told my leader, my supervisor on a couple occasions that my hands were bothering me and it was related to work. He testified on cross-examination to the same. In preparing for this argument and reading the Duran case, I believe this is different than what happened in the Duran case. You look at Ms. Duran's testimony and it appears during cross-examination she was confronted with these questions about, did you have complaints in the past? And her answer to that was, well, yeah, I did. And in the sense of the justices in the appellate court, there's a comment about indifferential or not consistent complaints. That's not here. That doesn't apply to this case. Well, I think to be fair to Duran, it's the difference between, in your case, it's the difference between suspicion and belief. And there is a difference between suspicion and belief. In Duran, she only suspected. In this case, he said, I thought it was work-related. That's a belief. Not only that, Your Honor, in this case, he filed two applications against the dealer-employer, which that didn't happen in Duran. And in this case, which is different in Duran, this individual, Mr. Riley, went to an IME or Dr. Williams and gave a history of his problems beginning 10 years prior, which predated my client's employment. And he also went to Dr. Stewart and gave the same history. You take that into consideration with the EMG study that's talked about here, the argument, that showed severe carpal tunnel. So not only do we have it plainly apparent to Mr. Riley when this was developed, and developed was work with their national paper, we also had the medical evidence that supports that it was their national papers. So this is a case that's clearly not against the manifest way of the evidence. I ask you to look at what's in Mr. Riley's mind. What was in his mind? And look at his testimony. He said, my hands bothered me and went numb while doing my work at international paper. The job description established that's a hand-intensive work. And you look at his actions. He filed two applications against that employer. He goes to the doctors and gives a history that that's when his problems began. It is plainly apparent in this case that Mr. Riley believed that his work activities at international paper were the cause of his problems. Are we off because Durand off? Is it an objective test? Durand is an objective test. A reasonable person is objective, isn't it? It's an objective test with subjective analysis in the sense that you've got to look at what's reasonable for that person in that set of circumstances and should they have known. We had the argument before this about an individual who didn't know until the diagnosis. Philosophically, is there even such a thing as an objective test in these cases? Well, it's tough. You've got to look at the job description. You've got to look at the history they gave the doctors. You've got to look at how they did their work. You've got to look at what they reported to the employer. Look at their actions in pursuing the claim. Who did they file the application against? And try to do the analysis of what they thought. What was apparent to them? Who were they contributing the work activity to? If this was a case where this gentleman had a sedentary job at international paper and didn't use his hands, I've got problems. No matter what he said to people. Because you have to consider that. These are all factors we're considering as to whether or not, in his mind, it's plainly apparent his condition was related to those work activities. And it is. And we'd ask you to affirm the decision and find that it's not against the Manifest Way of the evidence. Thank you. May I please report to Steve Clevenger for GSR? As we discussed at issue of this case, the manifestation date, GSI is of the opinion that the manifestation date of May 22, 2008 should be affirmed. And it was not against the Manifest Way of the evidence. As we've discussed, it's 32 years the claimant worked at international paper. The opinion of Dr. Williams was that the injury was related to his work at international paper. And even the claimant's own opinion was that his injuries were as a result of his work at international paper. To address the Duran case, a reading of the Duran case seems to say, first and foremost, that there's flexibility when assigning the manifestation date. The court says multiple times that it's fairness and flexibility when determining manifestation date. The court should accommodate unique scenarios. And the commission should weigh many factors when assigning a manifestation date. Duran does not give a bright line rule that the date of a physician's diagnosis... Is the only way to determine it? Do you agree that Duran does not say that? Correct, Duran does not say that. And it could have said that very easily and made that the rule. And they went out of their way to not say that. In the opinion, it says many times that, as I talked about, there's flexibility. It's a fact question for the commission. In our case, the commission made their fact determination that the 32 years of international paperwork was the cause of the claimant's injuries. The Duran case was also distinguishable because it dealt with a single employer and statute of limitations issue. Whereas our case dealt with multiple employers. And ultimately, which employer would be assigned liability? Should that really be a consideration when we determine what the rules are for the setting of the manifestation date? Is the claimant going to be allowed to recover? Is the claimant not going to be allowed to recover as compared to whether it's going to be paid by one insurance company or another? What relevance is that to when a reasonable person would become plainly apparent to a reasonable person that their injury was work-related? I think it's a factor that when the commission makes its decision that they take into account. They should take into account whether it should be time-barred? Because that's exactly what they did with Duran. Well, the commission takes that into account with all the other facts. It brings it in and they can't help but, when they're making the determination, factor that in. It's a part of the case that's there. In Duran, by the way, the commission said it was a different manifestation date than the Supreme Court said it was. So, in that particular case, it is a question of fact for the commission. The question is, when do we give them the deference? Say that again. The Supreme Court acknowledged in Duran that it is a question of fact for the commission and then turned around and reversed the commission. So, the question becomes, I suppose my real question is, why should there be a rule that's dependent upon whether there's recovery versus non-recovery? As opposed to whether there is plainly apparent to a reasonable person, period, regardless of where that falls. I think it's just a factor that distinguishes Duran from the set of facts in our case. My question is whether it's even relevant. I think that it is relevant. Whether somebody gets recovery or not is relevant? I think in our set of facts, they're just different from Duran. Setting aside Duran, isn't it our role to rule on the evidence in the law and what the chips fall where they may? Do we have to look at all of the recovery possibilities to make a legal decision? In theory, no. What was the point you were making? We're not talking about insurance companies here. We're talking about employer liability. The facts of the case are different from Duran in our case. He worked for 32 years at one company. Hand-intensive labor, I'll conclude now. Basically, the body of work in international paper was the cause of the claimant's injury. Thank you, counsel. May it please the Court, when Mr. Riley... Would you introduce yourself, please? I'm David Harrison, representing the petitioner. When my client was working for international paper for 32 years, he had a problem with his hands. He did tell management about that. He could have conceivably had arthritis. He could have conceivably had some peripheral neuropathy. He could have conceivably had very, very, I'm not sure if the symptoms cause numbness in the hands, but I think until he actually had the EMG and determined what it was that he had, severe bilateral carpal tunnel syndrome, that it would not be readily apparent to a reasonable person that he had a condition which was work-related. If I drop a cinder block on my foot and I go to work and I walk around, my foot's going to hurt, but it wasn't the work that caused the pain in my foot. So what we have to look for, I think, in order to make this whole confusing carpal tunnel syndrome law, which from Peoria Bellwood on has been how many angels can dance on the head of a pin, or maybe not quite that involved, but I think we need to do something more. I think we need for the petitioner to have, if it's readily apparent, we have to have, I think, a diagnosis so that the person understands that whatever it is that they have, whether it's cubital tunnel syndrome, carpal tunnel syndrome, or epicondylitis, or trigger finger, that they know they've got this repetitive trauma condition. In all cases, there has to be a diagnosis. I believe that would be a much better way of handling this. Hold on a second. I'm obviously no fan of Duran, but to say that there has to be a diagnosis, you'd be suggesting that if my hands hurt and they hurt bad, and I know they hurt because of the work I do, I haven't got a manifestation until some doctor tells me, by the way, what you have is carpal tunnel. He doesn't have to tell me that. The only thing I have to know is that whatever my malady is, it has to be plainly apparent to me that whatever my malady is, is work-related. And then I've got a manifestation date, even if no one told me the name of it. Your Honor, I disagree. It is different than the diagnosis. I disagree, Your Honor. If you had a peripheral neuropathy caused by diabetes, you could have those symptoms, and it's not work-related. I may be wrong. It may not be work-related. But the fact of the matter is, I believe it's work-related. I know I'm injured. I know there's something wrong with me. And I believe this is work-related. To me, that's manifestation. Because I agree with Justice Holder. This is not an objective test. You can say it's objective as many times as you want. Your Honor, you just said you knew you were injured. How do you know you were injured if you just have the symptoms and you don't know what it is? My hands hurt, and I work with them all day. They didn't hurt before I started working. They hurt now. And if you had underlying arthritis, your hands would hurt. Well, let me ask you a pointed question. I understand the Bright Line ruling, for simplicity's sake and ease of application, certainly. If the law was you had to have a diagnosis to trigger the manifestation date, that might make life easier for all of us. But if you were correct, then what would be the purpose of this plainly apparent or reasonable person language that is in Duran and is still in all the other cases? How do you argue that that is now not the test? Perhaps, Your Honor, I'm arguing that it shouldn't be the test. Well, that's more straightforward. Right, it shouldn't be. I think it's created confusion for the practitioners of workers' compensation law because they've created something that I think is a problem for all of us. And obviously, here we are in the second case today arguing about this. I think it's creating too many problems, and I think there has to be a different way to address this so that we don't have the kind of problems that we're having. But we do have a Supreme Court case, Duran decision, which can only be visited by them or across the street is another forum. Okay, but back to your point. We're really talking about a manifestation date, so the claimant can do what or is required to do what. So that he can give notice to his employer that he has a work-related condition. Right, and so you can go into the crucible of the arbitration, the crucible of the commission, whereupon the argument, no, it's arthritis, no, it's this, it's diabetes or whatever, and the claimant is then required to prove arising out of an enforcement. So, you know, that's our process. Unfortunately, that's why I filed three different applications here, because I was trying to cover all the dates because of the confusion we have because of the case law. Which is good practice, right. And frankly, I don't care whether it's international trade or manpower because my client's going to get paid, but I think in terms of practice, I think there needs to be a different way to do this. It's a good thing you took the extra three minutes. A good practice came out in the last two minutes. Counsel, you may reply. Your Honor, as we talked a lot about Duran today, and with good reason, because it's a Supreme Court case, it controls what we're doing here today, and the facts of that case, regardless of what GSI would tell you, are very similar to the facts of this case. But essentially boiling it down, if say Mr. Riley had had a knee injury, he knew he had a knee injury, he had knee symptoms, he had arthritis in the knee, it's a pre-existing condition. He goes and he works for manpower where he's standing all day and doing all kinds of stuff with his legs, and he has an exacerbation or aggravation of that condition to the point he requires medical treatment, it's much more severe than it ever was when he was working for that international paper, and he gets a firm diagnosis of an injury, wouldn't that be a compensable injury against manpower? I would submit to you that the facts in this case can be boiled down to that and allow you to find that the commission erred in finding that May 22, 2008 was the manifestation date, and that international paper is the responsible employer. As we submit in our brief, and I've argued here today, we believe the manifestation date is when Mr. Riley finally did know what the condition of his hands was, when he had the EMG, that's August 13, 2009, when he was working for manpower doing duties that were much more hand intensive and involved much more fine manipulation by his own testimony than they were at international paper. Thank you, counsel. The arguments in this matter this morning will be taken under advisement, a written disposition shall issue.